

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

8-28-2008

# Zodelava v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 07-2588

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"Zodelava v. Atty Gen USA" (2008). *2008 Decisions.* Paper 613.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/613

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 07-2588

LEVANI ZODELAVA; MAKA ZODELAVA; LUKA ZODELAVA
Petitioners

v.

ATTORNEY GENERAL OF THE UNITED STATES
Respondent

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency Nos. A96-021-863; -864; -865)
Immigration Judge:  Honorable Donald V. Ferlise

Submitted Pursuant to Third Circuit LAR 34.1(a)
August 13, 2008

Before: AMBRO, FISHER and JORDAN, Circuit Judges

(Opinion filed:  August 28, 2008)

OPINION

PER CURIAM

Petitioners seek review of the Board of Immigration Appeals' ("BIA") order

dismissing their appeal from the Immigration Judge's ("IJ") order of removal.  For the

reasons set forth below, we will deny the petition.

Petitioners, Maka and Levani Zodelava, and their son, Luka, are citizens of Georgia who entered the United States in February 2003 without valid travel documents. Maka Zodelava seeks asylum, withholding of removal, and relief under the CAT on the ground that she was persecuted in Georgia for being a Jehovah's Witness. Levani and Luka have submitted derivative applications.

At Petitioners' removal hearing, Mrs. Zodelava testified that she became a Jehovah's Witness in May 2001. Mrs. Zodelava explained that, as her practice came to be known in the community, her Christian Orthodox neighbors started to treat her with hostility, and her son was harassed at school. Mrs. Zodelava then recounted four specific acts of aggression that she attributes to Christian Orthodox extremists. First, in September 2002, her husband's car was bombed while parked in a lot in their home town. According to Mrs. Zodelava, one of the parking lot attendants told her that he had witnessed two young men throw a bomb at the car, shouting "you deserve it." (A.R. 000172.) Mrs. Zodelava explained that the police arrived at the scene of the explosion, but never conducted an investigation. A second incident took place in November 2002 when a group of approximately 20-30 people raided a Jehovah's Witnesses meeting taking place at a friend's home. During the raid, Mrs. Zodelava was hit with a stick but was not seriously injured. Next, in December 2002, a group of individuals accosted her husband in the hallway outside of their apartment, punched him in the face, and told him

to leave town. Several days later, someone threw a stone through the window of the Zodelavas's apartment. Attached to the stone was a note reading, "You Jehovah's Witnesses[,] you traitors of god get out of here." (A.R. 000172.) Mrs. Zodelava testified that she did not speak to the police about these latter incidents because she did not think they would help her family.

Mr. Zodelava also testified at the hearing. He described the events surrounding the raid in November 2002 and the altercation he had in his hallway the following month. Zodelava also provided his account of the car bombing, and stated that the police informed him that they would attempt to make an arrest, but failed to do so.

Following the hearing, the IJ denied Petitioners' applications for relief. The IJ found that Petitioners were not credible because their stories contradicted each other, themselves, and their affidavits. The IJ further found that, even assuming that the Petitioners were credible, Mrs. Zodelava failed to meet her burden of proof with respect to her applications for asylum, withholding of removal, or relief under the CAT. By order issued April 30, 2007, the BIA affirmed the IJ's decision insofar as it held that Mrs. Zodelava failed to meet her burden of proof; the BIA did not address the IJ's adverse credibility determination. The present petition for review followed.

II.

We have jurisdiction to review final orders of removal pursuant to 8 U.S.C. § 1252(a)(1). See Abdulai v. Ashcroft, 239 F.3d 542, 548 (3d Cir. 2001). We review the

3

BIA's decision for substantial evidence. See Abdille v. Ashcroft, 242 F.3d 477, 483-84 (3d Cir. 2001). Under this standard, we will uphold the Board's findings unless the evidence not only supports a contrary conclusion, but compels it. See id.

An applicant may demonstrate eligibility for asylum by showing either past persecution or a well-founded fear of future persecution on account of race, religion, nationality, membership in a particular social group, or political opinion. 8 U.S.C. § 1101(a)(42)(A); 8 U.S.C. § 1158. To establish past persecution, an applicant must show: "(1) one or more incidents rising to the level of persecution; (2) that is 'on account of' one of the statutorily-protected grounds; and (3) is committed either by the government or by forces that the government is either unable or unwilling to control." Toure v. Att'y Gen., 443 F.3d 310, 316-17 (3d Cir. 2006) (quoting Mulanga v. Ashcroft, 349 F.3d 123, 132 (3d Cir. 2003)). Our definition of persecution is narrow; it includes "threats to life, confinement, torture, and economic restrictions so severe that they constitute a threat to life or freedom." Fatin v. INS, 12 F.3d 1233, 1240 (3d Cir. 1993). Thus, "persecution does not encompass all treatment that our society regards as unfair, unjust, or even unlawful or unconstitutional." Id.

To establish a "well-founded fear" of future persecution, an applicant must show both a "subjectively genuine fear of persecution and an objectively reasonable possibility of persecution." Ghebrehiwot v. Att'y Gen., 467 F.3d 344, 351 (3d Cir. 2006). To satisfy the objective prong, an applicant must show that she would be individually singled out for

4

persecution, or that there is a "pattern or practice" of persecution of similarly situated persons. 8 C.F.R. § 208.12(b)(2)(iii)(A). To qualify as a "pattern or practice," the persecution must be "systemic, pervasive, or organized." Lie v. Ashcroft, 396 F.3d 530, 537 (3d Cir. 2005).

Upon review of the record, we conclude that substantial evidence supports the BIA's finding that Mrs. Zodelava failed to demonstrate either past persecution or a well-founded fear of future persecution. First, with respect to her claim of past persecution, the BIA correctly concluded that none of the incidents described above is severe enough to rise to the level of persecution under the INA. See Voci v. Gonzales, 409 F.3d 607, 615 (3d Cir. 2005) ("[O]ur cases suggest that isolated incidents that do not result in serious injury do not rise to the level of persecution."); Lie, 396 F.3d at 536 (holding that "two isolated criminal acts, perpetrated by unknown assailants, which resulted only in the theft of some personal property and a minor injury, [are] not sufficiently severe to be considered persecution"). Moreover, as the BIA explained, even assuming that the most extreme incident, the car bombing, did amount to an act of persecution, there was no evidence that it was religiously motivated; the fact that the parking lot attendant allegedly heard the car-bombers yelling "you deserve it" does not establish that the attack was "on account of" Mrs. Zodelava's religion. For these reasons, we conclude that the BIA's determination that Mrs. Zodelava failed to demonstrate past persecution is supported by substantial evidence.

5

We also conclude that substantial evidence supports the BIA's finding that Mrs. Zodelava failed to prove that she has a well-founded fear of future persecution, as she did not allege that she would be singled out for persecution, and the evidence in the record does not establish that there is a pattern or practice of persecution of Jehovah's Witnesses in Georgia. See Ghebrehiwot, 467 F.3d at 351. Although the record suggests that there is some discrimination and harassment against Jehovah's Witnesses in Georgia, the 2004 County Report on Georgia states that there was a general decline in violence against the religion, and that the government officially promotes religious tolerance. Moreover, this violence appears to have been primarily wrought by fellow citizens and not the result of governmental action or acquiescence. See Lie, 396 F.3d at 537 (explaining that "violence or other harm perpetrated by civilians against the petitioner's group does not constitute persecution unless such acts are committed by the government or forces the government is either unable or unwilling to control") (internal quotations omitted). In light of these considerations, we are not compelled to find that the record establishes a pattern or practice of persecution against Jehovah's Witnesses.

Given that Mrs. Zodelava has failed to establish either past persecution or a well-founded fear of future persecution, the BIA correctly determined that she necessarily failed to meet the higher burden required for withholding of removal. See Gomez-Zuluaga v. Att'y Gen., 527 F.3d 330, 348-49 (3d Cir. 2008). The BIA also correctly determined that Mrs. Zodelava did not meet the criteria for relief under the CAT because

she failed to establish that it was more likely than not that she would be tortured if removed to Georgia.  8 C.F.R. § 208.16(c)(2).

For the foregoing reasons, and because we conclude that Mrs. Zodelava's remaining arguments are without merit, we will deny the petition for review.